UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENF, LLC,

    Plaintiff,

v.

Case No. 12-cv-14770
Honorable Patrick J. Duggan

SMARTTHINGZ, INC.,

    Defendant.
_____/

# OPINION AND ORDER ON CLAIM CONSTRUCTION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON INVALIDITY

On October 26, 2012, FenF, LLC ("FenF") filed this lawsuit against Smartthingz, Inc. ("Smartthingz") alleging patent and trademark infringement. Specifically, FenF contends that Smartthingz is infringing FenF's patent, U.S. Pat. No. 800,002,675 ("the '675 patent"). FenF also accuses Smartthingz of unfair competition, false designation of origin, false representation, and false advertising. On March 7, 2013, Smartthingz filed a motion for summary judgment of invalidity. In the motion, Smartthingz argues that claim 35 of the '675 patent is anticipated by prior art and therefore is invalid under 35 U.S.C. § 102(b). The motion has been fully briefed. After reviewing the motion, the Court concluded that a *Markman*[1]

---

[1] *See Markman v. Westview Instr., Inc.*, 52 F.3d 067 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996).

hearing was needed to construe certain terms in the claim. The Court therefore held a *Markman* hearing on June 6, 2013. At the hearing, counsel for Smartthingz conceded that the motion for summary judgment of invalidity must be denied if this Court adopts FenF's construction of claim 35.

## I.     Background

The patent-in-suit relates to a toe stretcher, described and claimed in the patent as "specifically devised as a foot-therapy and toe-aligning device to align, separate, and stretch toes." (the '675 patent, abstract.) Essentially it is a device where the toes of the foot are inserted and separated by posts comprised of a material that renders the posts adjustable to make insertion easy for a variety of toe sizes and shapes and expandable to then stretch the toes. (*See id.*) The application for the patent was filed on October 31, 2007, and makes its earliest priority claim to October 17, 2003.

In its motion for summary judgment, Smartthingz contends that claim 35 of the patent-in-suit is anticipated by an earlier patent for a toe stretching device, U.S. Pat. No. 6,238,357 ("the '357 patent"). In making this argument, Smartthingz focuses on two examples of the device described in the '357 patent that are represented in Figures 3 and 4 of the patent. (*See* Mot. Ex. B.) Smartthingz argues that the language of claim 35 is indisputable and the claim terms do not need to be

construed because they are all subject to their plain and ordinary meaning.

In response, FenF argues that two terms within claim 35 require construction and that until this occurs, Smartthingz' summary judgment motion is premature. FenF essentially maintains that Smartthingz' construction of claim 35 is too simplistic and ignores intrinsic evidence in the '675 patent that must be considered. When that intrinsic evidence is considered, FenF argues, a construction different than that proposed by Smartthingz is suggested.

Claim 35 of the '675 patent reads:

> 35.   A foot-therapy and toe-aligning device, comprising:
> a frame with <u>four separators for separating a plurality of toes</u>, wherein the frame comprises a top portion, a bottom portion, a front portion, and a back portion, with <u>the separators connecting the top portion with the bottom portion</u>;
> wherein the separators, in combination with the top portion and the bottom portion, form three holes through the frame for insertion of a plurality of toes, wherein each hole includes an entrance into the back portion, an exit from the front portion, and surrounding walls connecting the entrance with the exit;
> wherein the four separators include two outer separators and two inner separators, such that each of the two outer separators include an inner portion that forms a surrounding wall in a corresponding hole and an outer portion that does not operate as a surrounding wall to a hole; and
> wherein at least one of the top portion and the bottom portion includes at least one elongated section that extends beyond the outer portion of at least one of the two outer separators.

(the '675 patent, Col. 19, ll.7- Col. 20 ll.13 (emphasis added).) FenF argues that

the phrases underlined above require construction.

According to FenF, the first phrase should be construed as "four separators each formed of an elastic material for separating a plurality of toes"; and the second phrase should be construed as "the separators connecting the top portion with the bottom portion and having the ability to be elongated and released to conform to the shape of a user's toes." (Pl.'s Resp. Br. at 8.) Smartthingz contends that FenF's construction is an improper claim amendment. As indicated earlier, Smartthingz believes the terms are subject to their plain and ordinary meaning. This means, Smartthingz contends, that the claim terms are not limited in the manner FenF describes (i.e., as "formed of an elastic material" or "having the ability to be elongated and released to conform to the shape of a user's toes.")

## II.   Legal Standard

### A.   Invalidity

Pursuant to 35 U.S.C. § 102(b), a patent is invalid if *inter alia* "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2012) (amended effective Mar. 13, 2013). A patent is presumed valid. 35 U.S.C. § 282. The party asserting invalidity therefore bears the burden of proof and the applicable standard

is clear and convincing evidence. *Eli Lilly & Co. v Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

"[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted).

Accordingly, the first step of an anticipation analysis is proper construction of the patent's claims. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1294 (Fed. Cir. 2002); *see also Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004) ("Whether a patent is invalid as anticipated is . . . a two-step inquiry . . . the first step requires construing the claim . . ."). Only once this is done should the patent claim be compared against the prior art to determine whether the claim is anticipated. *Power Mosfet*, 378 F.3d at 1406 ("The second step in the analysis requires a comparison of the properly construed claim to the prior art . . . ."); *see also Helifix Ltd. v. Blok-Lok Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). Claim construction is a question of law; whereas the comparison of the claim and the prior art are questions of fact. *Power Mosfet*, 378 F.3d at 1406; *see also Helifix*, 208 F.3d at 1346; *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991,

5

995 (Fed. Cir. 2006).

### B.     Construction

The Court of Appeals for the Federal Circuit's *en banc* decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (2005), provides a thorough synthesis of claim construction doctrine. According to the *Phillips* court, "the words of a claim 'are generally given their ordinary and customary meaning.'" *Id*. at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). ". . . [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*.

The *Phillips* court emphasized the importance of looking at the entire patent in construing claims because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313.  Thus, the ordinary meaning of a claim term cannot be looked at in a vacuum.  *Id*. (citing *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)).  The ordinary meaning must be viewed in the context of the patent specification and prosecution history.  *Id*.  (citing *Multiform*

6

*Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). The court may also consider "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" which "consists of all evidence external to the patent history, including expert and inventor testimony, dictionaries, and learned treatises." *Id*. at 1314, 1316 (internal quotation marks and citation omitted).

The Federal Circuit has emphasized the importance of the specification in claim construction:

> The claims, of course, do not stand alone. Rather, they are part of a "fully integrated written instrument" *Markman*, 52 F.3d at 978, consisting principally of a specification that concludes with the claims. For that reason, claims "must be read in view of the specification, of which they are part." *Id*. at 979. As we stated in *Vitronics*, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." 90 F.3d at 1582.

*Phillips*, 415 F.3d at 1315. "[C]laims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. U.S.A., Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). The *Phillips* court restated the Circuit's prior summary of this general principle:

> "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most

7

> naturally aligns with the patent's description of the invention will be, in the end, the correct construction."

415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).  The specification may reveal a special definition that the inventor has given to a claim term that differs from the meaning it would otherwise possess and, in that instance, the special definition must govern.  *Id.* (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

As indicated earlier, the patent's prosecution history also should be considered, if it is in evidence.  *Id.* at 1317 (citing *Markman*, 52 F.3d at 980; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33, 86 S. Ct. 684 (1966)).  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent."  *Id.* (citation omitted).

Courts are authorized to rely on extrinsic evidence; however, the Federal Circuit has warned that "it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)) (additional quotation marks and citations omitted).  In *Phillips*, the court clarified the role of extrinsic evidence in claim construction, explaining that

it should not be elevated above the meaning of the terms of the claim derived from the patent, itself. *Id*. at 1320-23. Thus a court should not determine the ordinary meaning or meanings of the claim term[s] in dispute based on extrinsic evidence, such as a dictionary, and then consult the specification to determine whether it excludes one of the meanings derived from the dictionary or limits the scope of that meaning. *Id*. at 1320. Instead, the court must first start with the specification as it "is 'the single best guide to the meaning of a disputed term,' and . . . 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" *Id*. at 1321 (quoting *Vitronics*, 90 F.3d at 1582). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id*.

In its final statement concerning the significant role of the specification in claim construction, the *Phillips* court pointed out "that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Id*. at 1323 (citing *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987)). As such, the court emphasized that the specification likely will have the following value to the claim construction process:

> One of the best ways to teach a person of ordinary skill in the

9

> art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. . . . The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent.

*Id*. (citations omitted).

### III. Analysis

Applying the above guidelines to the '675 patent, the Court concludes that FenF's construction of claim 35 is the correct one.

Considered in a vacuum, the terms of claim 35 could be construed simply in accordance with their plain and ordinary meanings as proposed by Smartthingz. The full instrument, however, reflects that "separators" referred to in the claim means posts formed of an elastic material that thereby have the ability to stretch and elongate vertically and expand outwardly.

The abstract of the '675 patent describes the important effects of the posts being comprised of an elastic material:

> The device is formed of an elastic material such that a user may place at least one of the plurality of posts between a user's toes and pull the post to stretch and elongate the post between the toes. Upon release, the elastic material of the post causes the post to attempt to return to its original shape, thereby causing it to expand out and

> conform its shape to fit snugly against the user's toes. Additionally, the elastic material allows the toe posts to be positioned and maintained at numerous locations between the user's toes for customizable positioning between the toes.

(the '675 patent, abstract.) The specification of the '675 patent explains that the improvements of the device on the prior art are premised on the use of an elastic material to form the posts:

> The toe separator in the Funatogawa2 invention appears to be formed of a die-cut foam and does not produce or teach a calculated balance of elastomeric properties and design shapes . . .
> \* \* \*
> Additionally, foam does not elongate sufficiently to allow a user to stretch the toe post or frame. Thus, a need exists for an intended stretchable toe post (and/or frame) because in stretching, the toe post becomes thinner in diameter and is thereby more easily placed between the user's toes. Upon release, a stretched toe post would contract in length and expand circumferentially to conform tightly to and effectively hold the user's toes, thereby remaining in the desired position. When released, the post would expand outwardly to increase pressure against the toes and thereby hold the device in the desired position. Equally significant, the posts would contract along a lengthwise axis to impart a lengthwise axis compressive holding force on the surface of the toe as well, also holding the device in the desired position. . . .

(*Id*. Col. 2 ll.16-19, ll.56- Col. 3 ll.2.) The detailed description of the invention further specifies the device as being comprised of "[a] plurality of posts formed of an elastic material . . .." (*Id*. Col. 7 ll.49-50; *see also* Col. 16 ll.31, 36 ("a plurality of posts formed of an elastic material" and "the posts have elastic properties"); Col.

17 ll.3 (same).) The detailed description further emphasizes that the benefits provided from the present invention are derived specifically from the toe posts being "formed of an elastomeric polymer that has sufficient elastomeric properties." (*Id*. Col. 8 ll.45-47; *see also* Col. 8 ll.35-36 ("the elastomeric material of the toe posts *of the present invention* provides a benefit that allows . . .") (emphasis added) .) The description goes on to identify the benefits derived from the posts being formed of such material in comparison to the prior art. (*See, e.g.*, *id*. Col 8 ll.5-39.) It is clear that the patentee when describing the posts as formed of an elastic material in the specification is not simply "setting out specific examples of the invention to accomplish [the defined] goals" but instead "intends for the claims and the embodiments in the specification to be strictly coextensive." *Phillips, supra*.

The prosecution history also reflects that the patent examiner reviewed the '357 patent as prior art when examining the application for the '675 patent. (the '675 patent at 2.) That the PTO issued the '675 patent after specifically considering this prior art is further evidence this Court must consider. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court. It is, however, evidence the court must consider in determining whether the

12

party asserting invalidity has met its statutory burden by clear and convincing evidence.").

Smartthingz argues in reply that FenF's construction is not a proper interpretation of claim 35 as written, but is an improper attempt to amend the claim. Smartthingz cites the following cases where the court rejected a patentee's attempt to amend its claim by adding language not appearing in the claim language: *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001); *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989); and, *Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*, No. 05-cv-73214, 2006 WL 6142850 (E.D. Mich. Oct. 25, 2006) (unpublished opinion). Smartthingz also points out that claim 35 uses the term "separators", whereas the references in the '675 patent to an elastic material are in relation only to "posts."

First, the '675 patent clearly equates the "posts" as "separators." They are not two different aspects of the device. The patent describes the posts as the mechanism that separates the toes and as a particular formulation of a separator (i.e., one made from an elastic material). In other words, as FenF's counsel explained at the *Markman* hearing, all posts are separators but not all separators are posts.

Second, unlike the cases cited by Smartthingz, the references to an elastic

13

material in the '675 patent are not simply described limitations or preferred embodiments or statements made by the inventor during the prosecution history. Instead, the references to posts formed of an elastic material describe "the present invention" or "this invention", explain that it is the only embodiment, and distinguish the invention from the prior art. Simply, a device comprised of separators "formed of an elastic material" is the only invention the '675 patent covers. When the written description clearly limits the meaning of a claim term to one different than its ordinary meaning, courts have construed the claim with the limitation. *See, e.g., Netcraft Corp. v. ebay, Inc.*, 549 F.3d 1394, 1397 (Fed. Cir. 2008) (concluding that "[w]hile the lay meaning of 'communications link' standing alone may be broader than 'internet access' . . . when considering the claim terms in light of the entire patent . . ." it is limited to "internet access."); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006) (construing the term "fuel injection system component" to mean only a fuel filter, despite the broader, ordinary meaning which "refers to any constituent part of the fuel injection system of a motor vehicle including, for example, fuel filters, fuel lines, and connectors."); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, (Fed. Cir. 1997) (concluding that "one skilled in the art reading the claims, description, and prosecution history would conclude that the term 'passage' in [the] claim . . . does

not encompass a smooth-walled, completely cylindrical structure.").

As such, the Court does not find that FenF is attempting to improperly amend claim 35 by proposing that "separators" be construed as posts formed of an elastic material or a material with elastomeric properties. Rather that is the construction provided for by the '675 patent as a whole.

## IV. Conclusion

In summary, when read in the context of the entire '675 patent, as this Court must, the term "separators" in claim 35 refers to a specific category of separators. That is, posts formed of an elastic material [or a material with elastomeric properties] such that they have the ability to stretch and elongate vertically and expand outwardly. As Smartthingz concedes, when claim 35 is construed in this manner, its motion for summary judgment of invalidity must be denied.

**SO ORDERED**.

Dated: July 25, 2013                    s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:
Guy T. Conti, Esq.
Joel L. Dion, Esq.
Richard W. Hoffmann, Esq.
Todd A. Holleman, Esq.