UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENF, LLC,

      Plaintiff,

                                    Case No. 12-cv-14770

v.                                   Honorable Patrick J. Duggan

SMARTTHINGZ, INC.,

      Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S (1) MOTION FOR RECONSIDERATION AND (2) MOTION FOR PERMANENT INJUNCTION**

This matter presently is before the Court on a motion for reconsideration filed by Plaintiff FenF, LLC ("FenF") pursuant to Eastern District of Michigan Local Rule 7.1 on April 1, 2014. In the motion, FenF seeks reconsideration of this Court's March 28, 2014 opinion and order which *inter alia* denied without prejudice FenF's motion for an injunction permanently enjoining Defendant SmartThingz, Inc. ("SmartThingz") from infringing FenF's patent, U.S. Pat. No. 800,002,675 ("the '675 patent"). On April 3, 2014, this Court issued a notice informing the parties that it was permitting SmartThingz to file a response to the motion for reconsideration if it wished to do so. SmartThingz filed a response on April 7, 2014.

**Applicable Standard**

Local Rule 7.1 provides that a motion for reconsideration will be granted only if the moving party "demonstrate[s] a palpable defect by which the court and the parties . . . have been misled" and "that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). A motion that merely presents the same issues already ruled upon by the court, either expressly or by reasonable implication, shall not be granted. *Id*. On the other hand, a court need not consider issues raised for the first time in a motion for reconsideration that could and should have been raised previously, as such motions are "aimed at reconsideration, not initial consideration." *Wardle v. Lexington-Fayette Urban County Gov't*, 45 F. App'x 505, 511 (6th Cir. 2002) (internal quotation marks and citations omitted). Similarly, motions for reconsideration "cannot . . . be employed as a vehicle to introduce new evidence that could have been adduced during the pendency [of the motion on which the court ruled]." *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 971 F. Supp. 262, 281 (E.D. Mich. 1997) (citing *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (emphasis in original removed)); *see also Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (explaining that motions under Fed. R. Civ. P. 59(e) "are aimed at *re* consideration, not initial consideration") (citing *FDIC v. World*

2

*Universal Inc.*, 978 F.2d 10, 16 (1st Cir.1992)).

## Analysis of FenF's Motion for Reconsideration

FenF filed a motion on December 16, 2013, seeking an injunction permanently enjoining SmartThingz from infringing the '675 patent.  The Court denied the motion without prejudice in its March 28, 2014 decision because, as of that date, FenF had not demonstrated its success on the merits of its patent infringement claim against SmartThingz.  Nor had the parties submitted to the Court a stipulation or any other writing reflecting a lack of dispute with respect to FenF's patent infringement claim.  As this Court stated, "[a] court may issue a permanent injunction . . . only once the requesting party has demonstrated its success on the merits."  (ECF No. 46 at 6, citing *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 1404 n.12 (1987).)

FenF attaches to its motion for reconsideration an e-mail message from SmartThingz's counsel to FenF's counsel, dated March 31, 2014, giving FenF's counsel permission to "represent to the Court that the parties stipulate that to [sic] judgment of infringement in FenF's favor under the court's claim construction." (ECF No. 47 Ex. A.)  In its response to FenF's motion for reconsideration, SmartThingz also writes: "FenF's motion accurately reflects the parties' agreement and stipulation that, under the Court's claim construction, SmartThingz's accused

3

products infringe the asserted claim of the patent-in-suit."  (ECF No. 49.)

Technically, this newly submitted but previously available evidence should not entitle FenF to a different disposition of its motion for a permanent injunction.[1] The Court appreciates, however, that denying FenF's motion for reconsideration on this basis only will delay its inevitable need to consider whether to grant FenF's motion for a permanent injunction.  As such, the Court will proceed to now consider the traditional factors relevant to deciding whether to grant FenF's request for injunctive relief.

### Whether to Grant FenF's Request for a Permanent Injunction

FenF seeks a permanent injunction under the Patent Act, 35 U.S.C. § 283, enjoining Smartthingz from continuing to infringe the '675 patent.  As set forth in this Court's previous decision, a permanent injunction may issue only after the plaintiff has prevailed on the merits of its claim and established that equitable relief

---

[1]In its motion for reconsideration, FenF suggests that the Court should have concluded that FenF prevailed on its patent infringement claim based on representations made by SmartThingz's counsel at an August 21, 2013 scheduling conference.  (ECF No. 47 at 2-3.)  As the parties are aware, however, the scheduling conference was not on the record and statements made at such a meeting do not become part of the case record automatically.  When a party wants a statement and/or agreement to be part of the case record, that party generally must submit something to the Court in writing or file something on the docket. When the submission is intended to reflect an agreement between the parties, it should be stipulated to and signed by the other side.

is appropriate.  (ECF No. 46 at 6.)  Four factors are relevant to a court's

determination of whether equitable relief is appropriate: (1) whether the plaintiff

will suffer irreparable injury absent an injunction; (2) whether remedies available

at law, such as monetary damages, are adequate to compensate the plaintiff for its

injury; (3) whether the balance of the hardships between the plaintiff and defendant

warrant a remedy in equity; and (4) whether the public interest would be served or

disserved by a permanent injunction.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S.

388, 391, 126 S. Ct. 1837, 1839 (2006) (citations omitted).  The decision whether

to grant injunctive relief falls within the district court's discretion.  *Id*.

 Prior to the Supreme Court's decision in *eBay*,  courts followed the "general

rule" that a permanent injunction should issue "against patent infringement absent

exceptional circumstances.'"  *Id*. (internal quotation marks and citation omitted).

This was based on a presumption of irreparable harm where the patent holder has

demonstrated patent infringement.  *See id*.  In *eBay*, however, the Supreme Court

rejected this presumption and held that the court's discretion whether to issue an

injunction in a patent case "must be exercised consistent with traditional principles

of equity."  *Id*. at 394, 126 S. Ct. at 1841.

## Irreparable Harm

 The Federal Circuit has noted that while *eBay* rejects the "general rule that

5

an injunction normally will issue when a patent is found to have been valid and

infringed, it does not swing the pendulum in the opposite direction." *Robert Bosch*

*LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (2011). The court explained:

> In other words, even though a successful patent infringement plaintiff
> can not longer rely on presumptions or other short-cuts to support a
> request for a permanent injunction, it does not follow that courts
> should entirely ignore the fundamental nature of patents as property
> rights granting the owner the right to exclude.

*Id*.

This right as a general rule is not ignored and is enforced traditionally where

the parties are in direct competition. *See, id*. at 1150 (indicating that the issuance

of a permanent injunction "is particularly apt in traditional cases . . . where the

patentee and adjudged infringer both practice the patented technology."); *see also*

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir.

2013) ("Where two companies are in competition against one another, the patentee

suffers the harm– often irreparable– of being forced to compete against products

that incorporate and infringe its own patented inventions."). SmartThingz

contended in response to FenF's motion for a permanent injunction that FenF does

not practice the patented invention. (ECF No. 41 at Pg ID 543-44.) This Court

disagrees however, for the reasons addressed in FenF's reply brief. (ECF No. 42 at

Pg ID 600-02.)

6

Further supporting a finding of irreparable harm resulting from SmartThingz's infringement is the fact that SmartThingz sells its infringing product for substantially less than FenF sells its YogaToes product, using many of the same channels of commerce. (ECF No. 33 ¶ 5; ECF No. 34 Ex. B at 53, 77.) Without an injunction, SmartThingz and other imitators can continue to flood these channels with infringing products that appear identical to FenF's patented products. Imitators have a significant advantage because they did not incur costs in developing the patent, yet are able to reap the significant benefits of patent ownership. Lack of development costs will allow them to offer the infringing product at a lower price, thus eroding the price of the product, potentially driving FenF out of the market.

Additionally, FenF has made a business decision to try and retain market exclusivity for products covered by the '675 patent and thus to not license its use to anyone. (ECF No. 33 ¶ 8.) SmartThingz's infringement diminishes FenF's ability to exclude others from practicing its patent despite its decision to retain market exclusivity. *See Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("The district court correctly found Presidio's unwillingness to license favored finding irreparable injury."). Finally, FenF presents evidence that raises concerns regarding SmartThingz's ability to satisfy a

7

judgment, or at least FenF's ability to trace SmartThingz's earnings to collect on a judgment.  In response to the motion, SmartThingz has not responded to FenF's allegations or concerns.  This further supports a finding of irreparable harm.  *See Robert Bosch LLC*, 659 F.3d at 1154-55.

For the above reasons, the Court finds proof that FenF will be irreparably harmed absent an injunction.

## Adequate Remedy at Law

SmartThingz asserted in response to FenF's motion for an injunction that "[t]he issue of irreparable harm and adequacy of a remedy at law are very closely related."  (ECF No. 41 at Pg ID 547, citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008).)  As SmartThingz indicates, "[t]his is logical because a harm that can adequately be remed[ied] by money damages is, by definition, not 'irreparable' and vice versa."  (*Id*.)  The Court agrees and therefore finds that this second factor also favors the issuance of an injunction.

## Balance of Hardships

FenF argued in its motion for an injunction that the balance of hardships weighs in favor of granting its request for a permanent injunction. FenF pointed out that the YogaToes product that is being challenged in the marketplace by SmartThingz's "cheaper, imported, and infringing product" is FenF's main

8

product.  (ECF No. 32 at Pg ID 398; ECF No. 33 ¶ 6.)  FenF argues that

SmartThingz offers other products for sale from which it can derive revenue if it is

ordered to stop selling the infringing product.  FenF also points out that

"SmartThingz knew of FenF's Yoga Toes product before developing its own

SmartToes product, and chose to ignore the risk that SmartToes might embody

patented technology."  (ECF No. 32 at Pg ID 398, citing ECF No. 34 Ex. A at 21-

22, Ex. B at 23-24, 172.)

SmartThingz countered that it will suffer greater harm as a result of an

injunction because it "is a small company, with only two employees, a relatively

narrow product line, and a business that has been, at times, struggling."  (ECF No.

41 at Pg ID 547.)  SmartThingz argued that courts have declined to issue

injunctions where doing so may well put the defendant out of business.  (*Id*., citing

*Sundance, Inc. v. Demonte Fabricating Ltd.*, No. 02-73543, 2007 WL 37742, at *2

(E.D. Mich. Jan. 4. 2007).)

Interestingly, however, Judge Cohn changed his decision in *Sundance* and

while initially denying the plaintiff's request for permanent injunctive relief, *id*.,

subsequently entered a permanent injunction.  *Sundance*, No. 02-73543, 2007 WL

3053662 (E.D. Mich. Oct. 19, 2007).  In any event, the size of SmartThingz's

workforce and product line does not weigh in favor of the Court granting or

9

denying FenF's motion.  More significant to the Court is the fact that SmartThingz was aware of FenF's YogaToes product when it developed its own SmartToes.  *See Robert Bosch LLC*, 659 F.3d at 1156 (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1996) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

As such, the Court concludes that the "balance of hardships" factor also indicates that equitable relief is appropriate.

### Public Interest

With respect to this last factor, a plaintiff must show that "the public interest would not be disserved by a permanent injunction."  *eBay*, 547 U.S. at 391, 126 S. Ct. at 1839.  The public has a "general interest in the judicial protection of property rights in inventive technology . . . ."  *Douglas Dynamics, LLC*, 717 F.3d at 1346; *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383-84 (Fed. Cir. 2006).  Thus the question is whether this interest is outweighed by some other public interest.

FenF contended that "[t]here is no overriding public interest that would be disserved or frustrated by granting FenF's request for a permanent injunction.  The public's health and safety is not implicated.  The only consequence to the public

10

would be the unavailability of Smart[T]hingz's cheaper, imported, infringing products . . .." (ECF No. 32 at Pg ID 399.) As FenF pointed out, however, this interest is not paramount to the public's interest in protecting patent rights. *See Sanofi-Synthelabo*, 470 F.3d at 1383-84 (finding that "the significant public interest in encouraging investment in drug development and protecting the exclusionary rights conveyed in valid pharmaceutical patents" outweighs the public's interest in the reduced cost of a generic, infringing drug) (internal quotation marks and citation omitted).

In response to FenF's argument, SmartThingz referred generically to the harm of an injunction to third parties, including its employees and customers. (*See* ECF No. 41 at Pg ID 547.) The only harm to SmartThingz's customers apparent to this Court, however, is the availability of a cheaper product. The significance of that interest is addressed in the preceding paragraph. As to the potential harm to SmartThingz's employees, the Court notes that there are only two: SmartThingz's principals who knew about FenF's product when they created the infringing product. Thus the Court believes that those individuals took the risk that an injunction might issue.

The Court therefore concludes that this last factor also favors equitable relief.

11

**Conclusion**

In light of the information now submitted reflecting SmartThingz's

concession that it is liable to FenF for patent infringement based on the Court's

claim construction, the Court finds that FenF has prevailed on its patent

infringement claim.  Applying the factors relevant to deciding whether equitable

relief is warranted in response to that infringement, the Court concludes that it is.

Accordingly,

**IT IS ORDERED**, that Plaintiff FenF, LLC's Motion for Reconsideration is

**GRANTED** and its request for a permanent injunction is **GRANTED**. The Court

will issue a separate order entering a permanent injunction.

Dated: April 14, 2014                       s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
Guy T. Conti, Esq.
Michael J. Druzinski, Esq.
Richard W. Hoffman, Esq.
Joel L. Dion, Esq.
Todd A. Holleman, Esq.